(324 P.3d 1146)
No. 110,026

STATE OF KANSAS, *Appellee*, v. JOHN ARTHUR DORITY, *Appellant*.

Opinion filed May 16, 2014.

*Brett W. Berry*, of The Law Office of Sarah J. Loquist, P.A., of Topeka, for appellant.

*Chadwick J. Taylor*, district attorney, *Jodi Litfin*, assistant district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., HILL and ARNOLD-BURGER, JJ.

MALONE, C.J.: John Arthur Dority appeals his convictions of domestic battery and endangering a child. Dority argues that there was insufficient evidence to support his convictions. He also argues that he did not receive a fair trial due to the trial judge's preconceived stereotype of domestic violence victims. For the reasons set forth herein, we affirm the district court's judgment.

On the afternoon of May 2, 2012, Kimberly Scourten called for an ambulance and she and her 4-month-old daughter, T.D., went to the hospital so that medical personnel could check T.D. for possible head trauma. While at the hospital, Scourten told police that she had been involved in an argument with Dority, her boyfriend and T.D.'s father. Scourten seemed upset at the hospital and looked as though she had been crying.

Officer Eric Seibel of the Topeka Police Department interviewed Scourten at the hospital. Scourten told Seibel that she and Dority had been yelling at each other at their home and that she went into the living room, picked up T.D., and sat down on the couch. Scourten reported that when she began to stand up, Dority shoved her back down onto the couch. When she started to stand up again, Dority shoved her from behind, knocked T.D. out of her hands and onto the floor, and hit Scourten in the back of the head.

Officer Alexander Wall also spoke with Scourten, who told him that Dority had pushed her down as she tried to get off the couch and that she and T.D. both fell to the floor. Scourten told Wall that the bruise on T.D.'s head came from T.D. landing on the ground after Dority pushed Scourten. Wall spoke with Dority that night as well. Dority told Wall that he had argued with Scourten, that she had pushed and shoved him, and that he had used his body to shield T.D., who was on the couch. At first, Dority said that he was unaware T.D. was hurt, but he then told Wall that T.D.'s injury probably occurred from Dority making contact with T.D. while trying to protect her from Scourten.

Dority was arrested for domestic battery, and Scourten helped him post bond. The next day, Scourten went to the district attorney's office and filled out a "Request to Modify Contact" form in which she stated that Dority "did not mean to do this (shove me) with our daughter in my hands." On July 16, 2012, the State charged Dority with one count of domestic battery and one count of endangering a child. The domestic battery charge was alternatively based on intentional or reckless conduct.

At the bench trial on March 5, 2013, Scourten's testimony differed from what she had told Seibel and Wall at the hospital. Scourten testified that she and Dority had an argument on the day in

question, during which she put T.D. on the couch. Dority picked up T.D. and, when Scourten handed him a bottle, began to feed T.D. Scourten testified that she hit Dority while he was feeding T.D. After Scourten hit Dority, he left their home, at which time T.D. began rubbing her head and crying. Scourten stated that T.D. had fallen off the couch 2 days earlier, so when she saw T.D. rubbing her head, she became concerned and called an in-home nurse who worked with the family. The nurse told Scourten to take T.D. to the emergency room in case T.D.'s actions were related to her previous fall off the couch.

Regarding her statements to the police at the hospital, Scourten largely recanted them. She testified that she did not tell police that Dority shoved her and that she did not recall telling police that T.D. fell out of her arms and onto the floor. Moreover, Scourten stated that she did not recall Dority trying to shove her, Dority knocking T.D. out of her hands, or T.D. hitting her head. Concerning the form on which she wrote that Dority had shoved her, Scourten stated that she had filled it out incorrectly because she was in a hurry to get to the bank before it closed to obtain money for Dority's bond. Finally, Scourten testified that she and Dority were still together.

Seibel testified for the State, as did Wall; both officers recounted what Scourten had told them on the day in question. Additionally, Seibel testified that Scourten never told him that she had hit Dority or that she had caused T.D.'s bruise. He testified that Scourten's version of events as she related it on the day in question was consistent with T.D.'s injuries and he believed it was accurate.

Dority testified on his own behalf, stating that although he could not remember what the argument was about, Scourten had hit him on the back of the head while he was holding T.D., at which point he placed T.D. on the couch and walked out the door to give Scourten time to cool down. Dority explicitly denied having physical contact with Scourten; he testified that he did not hit her, did not bump her, did not jostle her, did not brush past her, and did not threaten her. He also denied harming T.D. in any way.

After hearing the evidence, the district court found Dority guilty as charged. In rendering the verdict, the trial judge commented

that based on his experience in this type of case, it is common for victims of domestic violence to recant their initial police reports when testifying at trial. The trial judge found that Scourten's version of events that she gave to the police was far more persuasive than her testimony at trial. The district court sentenced Dority to a total of 18 months in jail but placed him on probation. Dority timely appealed the district court's judgment.

On appeal, Dority argues that there was insufficient evidence to support his convictions. Regarding his domestic battery conviction, Dority contends that domestic battery is an alternative means crime and that the State failed to introduce sufficient evidence to convict him of each alternative means of committing the crime. Dority also argues that the conflicting and inconsistent nature of the testimony·was insufficient to convict him of both charges beyond a reasonable doubt.

" 'When examining the sufficiency of the evidence in a criminal case, the standard of review is whether, after reviewing all the evidence in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.] An appellate court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. [Citation omitted.]" *State v. Lowrance*, 298 Kan. 274, 296, 312 P.3d 328 (2013).

Initially, Dority points out that the domestic battery charge was alternatively based on intentional or reckless conduct and that the State failed to introduce sufficient evidence to convict him of each alternative means of committing the crime. In response, the State asserts that alternative means jurisprudence is inapplicable in instances, such as here, where there was a bench trial instead of a jury trial.

Our Supreme Court has stated that alternative means jurisprudence stems from a concern for jury unanimity:

"In *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994) (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]), this court established that "'[W]here a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged."' . . . Recently, the majority in *State v. Wright*, 290 Kan. 194, 201, 206, 224 P.3d 1159 (2010), reiterated that jury unanimity is statutorily required in Kansas and explained that the alternative means rule and super-sufficiency requirement emanating from *Timley*

'is the only choice to ensure a criminal defendant's statutory entitlement to jury unanimity.' " *State v. Foster*, 298 Kan. 348, 352-53, 312 P.3d 364 (2013).

Specifically, this court has noted that "alternative means jurisprudence developed as a method of ensuring a criminal defendant's statutory right to a unanimous jury verdict. [Citation omitted.] The same jury unanimity concerns do not apply when evidence is presented to a single factfinder, as in a bench trial. [Citation omitted.]" *In re C.T.*, No. 107,841, 2012 WL 5205752, at *4 (Kan. App. 2012) (unpublished opinion); see also *State v. Kennedy*, No. 106,728, 2012 WL 4678927, at *2 (Kan. App. 2012) (unpublished opinion) (alternative means issue inapplicable when defendant was convicted at bench trial and there was no issue of jury unanimity); *City of Pittsburg v. Witty*, No. 101,251, 2009 WL 2436695, at *1 (Kan. App. 2009) (unpublished opinion) (same).

Here, as in the cases cited above, there was only one factfinder: the district court judge. Because this was a bench trial, jury unanimity was not a concern in this case. Accordingly, Dority's alternative means argument is inapplicable.

Dority also argues that the conflicting and inconsistent nature of the testimony given by Scourten, Wall, and Seibel rendered it impossible for a rational factfinder to have found him guilty of the crimes. Specifically, Dority points out that Seibel and Wall were not present for the argument between Scourten and Dority; rather, the officers talked with Scourten and Dority after the fact. Additionally, Scourten and Dority both testified at trial that Scourten shoved Dority, not the other way around.

As the State responds, Dority is asking this court to reweigh the evidence and the witnesses' credibility. This court does not undertake such tasks. See *Lowrance*, 298 Kan. at 296. Dority does not contend that the State failed to meet the specific elements of either crime. Viewing the evidence in the light most favorable to the State, there was sufficient evidence to support Dority's convictions.

Next, Dority argues that he did not receive a fair trial due to the trial judge's stated beliefs about domestic violence victims. In rendering his verdicts on the two charges, the trial judge stated, in part:

"So it's up to this Court to decide, as best it can, which version of the incident is the most persuasive and as I've said before, we tell juries that when they are acting as finders of fact, as I am in this case, they can use common knowledge and experience about which a witness has testified to. *And using my common knowledge and experience . . . , I can say it is absolutely not uncommon for the victims in these kinds of cases to come in at the time of trial and totally change their story around and say either they didn't tell the police what the police say they told them or that they were not being truthful for some other motive or whatever and that, in fact, none of this violence took place.*

"And so I don't find that particularly persuasive at all, particularly when the physical evidence, State's Exhibits 2, 3, the photos, and then 4, the statement that was made the following day at the district attorney's office, all are consistent with the testimony of the police officers as to what the victim from the crime, alleged victim actually told them and I can find, with no problem at all, that she told the police what they said she told them. . . .

"And that being the case, I think her version that she gave to the police, by far and away, is far more persuasive of what actually took place. I have no problem whatsoever finding beyond a reasonable doubt the defendant guilty on both counts . . . of the charging document and so that is my verdict on each of these counts." (Emphasis added.)

Dority points to the one sentence in which the trial judge commented that based on his experience in this type of case, it is common for victims of domestic violence to recant their initial police reports when testifying at trial. Dority claims the district court improperly relied on personal knowledge about domestic violence victims instead of relying on the evidence provided at trial. A district court abuses its discretion when it relies upon facts that are not supported by substantial evidence in the record. *State v. Bogguess*, 293 Kan. 743, 753, 268 P.3d 481 (2012).

Dority cites *State v. Prewitt*, No. 106,725, 2013 WL 646480 (Kan. App. 2013) (unpublished opinion) for support. In that case, this court found that a district court erred by allowing improper testimony about the "cycle of violence"—a recurrent pattern of violence and reconciliation in which a victim often recants complaints after reconciliation with his or her abuser—to explain the change in story by an alleged victim of domestic violence. However, *Prewitt* is distinguishable because it dealt with the admission of specific evidence and found that a police officer's testimony about the cycle of violence was inapplicable and irrelevant where there

was no testimony of any prior abuse. 2013 WL 646480, at *4. Here, there was no testimony about a cycle of violence. Instead, the trial judge explicitly stated that he was relying upon his own common knowledge and experience to make a credibility determination and assess the weight of the evidence.

Although not cited by either party, we find two unpublished opinions by this court to be instructive. In *Lambert v. Cromer*, No. 98,906, 2008 WL 2370076, at *2 (Kan. App. 2008) (unpublished opinion), this court reversed the judgment of the district court after finding that the trial judge "relied directly on his own special knowledge to decide the case." The lawsuit stemmed from an incident in which the plaintiff hit a cow with his truck while driving on a highway. The plaintiff sued the cow's owner, and, after a bench trial, the district court ruled in the plaintiff's favor. The trial judge wrote in his opinion that the judge had grown up on a farm that included cattle, held a Bachelor of Science degree in agriculture, managed a family farming operation that included making decisions about maintaining and replacing fences, and bought and sold cattle on his own account.

In reversing the judgment, this court noted that there was no direct evidence that the defendant was negligent in maintaining his pasture fence. 2008 WL 2370076, at *1. This court found that the trial judge essentially had "provided the equivalent of expert testimony about the behavior of cattle and what a 'good caretaker' would do to keep cattle within a fenced area." 2008 WL 2370076, at *1. This court found that the trial judge had gone too far in relying upon his special knowledge of a particular subject to decide the case but noted that judges may use common knowledge and experience to resolve factual disputes. 2008 WL 2370076, at *1.

In *In re Marriage of Henry*, No. 105,861, 2012 WL 1450489, at *4 (Kan. App. 2012) (unpublished opinion), this court reviewed a district court's child-custody determination. When delivering his decision, the trial judge stated:

"I will tell you that having been on the bench 14 years, I have seen many situations, many instances in which people who are either out-of-state or they only get summer visitation, they will end up filing a motion at some time right before

the end of that summer to try to change custody, and that's always kind of a red flag for me . . . ." 2012 WL 1450489, at *2.

On appeal, the petitioner cited *Lambert* and argued that the trial judge improperly relied upon his personal experience. The *Henry* court distinguished the cases, however, by pointing out (1) the *Lambert* judge "relied on specialized training and expertise gained outside the courtroom" while the *Henry* judge "merely noted a situation he had encountered many times during 14 years as a judge"; (2) although "an expert witness would have been required to testify about the reasonable practices of maintaining pasture-land fences, no expert would be needed to say that it can be a 'red flag' when a parent tries to change custody right before that parent's summer parenting time is coming to an end"; and (3) the judge in *Henry* did not indicate that he based his decision on the knowledge at issue—he properly considered the statutory factors implicated in child-custody determinations. 2012 WL 1450489, at *4.

*Lambert* and *Henry* stand for the proposition that a trial judge, as the factfinder in a bench trial, is not allowed to use his or her *special knowledge* of a particular subject to decide an issue without hearing evidence to support the judge's findings. However, a trial judge is allowed to use his or her *common knowledge and experience* to determine the credibility of a witness and assess the weight of a witness' testimony.

The facts of the case at hand follow *Henry* much more closely than *Lambert*. As in *Henry*, the judge here merely noted a situation he had encountered previously in cases involving domestic battery. Additionally, as in *Henry*, an expert witness would not be required to testify that it is common for a domestic violence victim to change his or her story prior to trial. This belief did not represent specialized knowledge or expertise personal to the trial judge. Finally, and importantly, the trial judge indicated that he was not basing his guilty verdicts solely on his common knowledge and experience about domestic violence victims. The trial judge also indicated that he was considering the physical evidence, including the photographs of the injuries and the written statement that Scourten

made at the district attorney's office the day after the incident. Considering all the evidence, the trial judge found that Scourten's version of events that she gave to the police was far more persuasive than her testimony at trial.

We conclude that Dority was not denied a fair trial due to the trial judge's stated beliefs about domestic violence victims. Indeed, almost 10 years ago, while determining whether prior inconsistent statements of a witness can be used as substantive evidence to prove the elements of a crime, this court noted that "victims of domestic violence often recant their initial statements to police." *State v. Coppage,* 34 Kan. App. 2d 776, 782, 124 P.3d 511 (2005). This is the sort of common knowledge that a factfinder is allowed to use to make his or her credibility determinations. Here, the trial judge used his common knowledge and experience to explain why he found the police officers' testimony to be more credible than Scourten's testimony. But there was additional evidence to support the verdicts beyond a reasonable doubt, and Dority is not entitled to receive a new trial based on the trial judge's statement about domestic violence victims.

Affirmed.