NOT DESIGNATED FOR PUBLICATION

No. 121,610

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RYAN KILLOUGH,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; FRANKLIN R. THEIS, judge. Opinion filed August 21, 2020. Affirmed.

*Charles P. Bradley*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.

*Thomas G. Lemon*, of Cavanaugh, Biggs & Lemon, P.A., of Topeka, for appellee.

Before ATCHESON, P.J., BRUNS and POWELL, JJ.

PER CURIAM: The Kansas Department of Revenue (KDOR) suspended Ryan Killough's driver's license after he refused to submit to a blood-alcohol breath test. Subsequently, Killough sought judicial review in the district court, which reversed KDOR's decision, finding reasonable grounds did not exist to request a breath test. KDOR now appeals, claiming reasonable grounds to believe Killough was driving while under the influence is supported by the evidence in the record. It also asserts the district court ignored certain evidence. While we acknowledge that reasonable people could disagree with the district court's factual findings, we are not permitted to reweigh the

1

evidence given our deferential standard of review. Thus, we are compelled to affirm the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Late on August 19, 2018, Killough was stopped while driving for making an improper right turn by Officer Cassandra Caviness of the Topeka Police Department. Caviness noticed Killough would not make eye contact or breathe toward her. She also noted he was smoking a cigarette and refused to extinguish it when asked. Caviness observed Killough was wearing a "Coors Light" wristband, and Killough admitted to being at a bar earlier but denied drinking any alcohol. Caviness told another officer she could not smell alcohol but decided to get Killough out of the car to see if he was intoxicated. After Killough stepped out of the car, Caviness said she could smell alcohol. Killough refused to perform a field sobriety test or take a preliminary blood-alcohol breath test. Caviness arrested Killough for DUI.

After Killough later refused to submit to an evidentiary blood-alcohol breath test, he was served with a DC-27 form, notifying him of the intention to suspend his driver's license for refusing to submit to a blood-alcohol breath test. On the form, Caviness listed the following reasonable grounds to suspect Killough was driving under the influence: odor of alcoholic beverage, slurred speech, bloodshot eyes, difficulty in communicating, chain-smoking cigarettes and sucking on mints to hide the odor of alcohol, and refusing a field sobriety test and preliminary breath test.

An administrative hearing was held, and the hearing officer affirmed KDOR's suspension of Killough's driver's license. Killough then petitioned for judicial review in the district court.

At trial, the video from Caviness' camera was admitted into evidence and reviewed by the district court. The district court found the evidence did not support reasonable grounds to request a breath test. The district court found Killough's speech was clear and his eyes were not bloodshot in the video. Moreover, it concluded that the wristband Killough wore from the bar did not create an inference Killough had been drinking. The district court ultimately concluded there were not reasonable grounds to believe Killough was driving under the influence and it reversed KDOR's decision to suspend Killough's license.

KDOR timely appeals.

ANALYSIS

On appeal, KDOR claims the district court erred by overturning its decision to suspend Killough's driver's license. KDOR asserts: (1) The district court did not consider the evidence; (2) law enforcement possessed reasonable suspicion to investigate Killough for DUI; and (3) probable cause existed to arrest Killough for DUI.

We review a district court's decision in a driver's license suspension case to determine "whether substantial competent evidence in the record supported the district court's factual findings and whether the conclusion derived from those findings is legally correct." *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). Whether a law enforcement officer had reasonable grounds to take a particular action is a mixed question of law and fact. We review the district court's ultimate legal conclusion de novo "while deferring to the district court's factual findings." 309 Kan. at 1213-14. Killough bears the burden to show KDOR's decision to suspend his driver's license should be set aside. See K.S.A. 2019 Supp. 8-1020(q); K.S.A. 77-621(a)(1).

I.    DID THE DISTRICT COURT FAIL TO CONSIDER THE EVIDENCE?

First, KDOR argues the district court erred because it failed to consider evidence from Caviness' body camera and the DC-27 form. Although KDOR attempts to frame the issue as the district court failing to consider all the evidence, in reality it takes issue with the weight the district court placed on the evidence. But given that we only review a stale record, we do not reweigh evidence, resolve evidentiary conflicts, or make credibility determinations. See *Jarvis v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 1081, 1086, 442 P.3d 1054, *rev. granted* 310 Kan 1062 (2019). Our duty is to simply determine if substantial evidence supports the district court's findings.

At trial, the district court considered the video from Caviness' body camera and the DC-27 form in the administrative record. KDOR alleges the district court failed to consider five facts: (1) Killough's speech was slurred; (2) his eyes were bloodshot; (3) he avoided eye contact with and breathing toward Caviness; (4) he smoked cigarettes and used mints to mask the odor of alcohol; and (5) he wore a wristband from a bar. Our review of the record shows the district court considered all the evidence before it.

KDOR argues the district court erred in finding Killough did not slur his speech or had trouble communicating. It believes this error occurred because the district court made its finding based solely on the video, not any testimony, and that the findings contradict the DC-27 form. But there was no testimony presented at trial and the video supports the district court's finding that Killough had no trouble speaking, his speech was clear, and Killough communicated with Caviness without difficulty. While the DC-27 form does indicate his speech was slurred and he had trouble communicating, no testimony was offered to support this allegation, and the district court concluded that the video evidence contradicted the form.

KDOR also alleges the district court did not consider Killough's bloodshot eyes because the district court found the video did not support their presence and disregarded the DC-27 form. The district court found the video did not show that Killough's eyes were bloodshot, and our review of the video supports the district court's conclusion. While Caviness may have had a better view of Killough's eyes than the video and could have better seen whether they were bloodshot, the district court had to make its determination based on the admitted evidence. The DC-27 form did indicate Killough's eyes were bloodshot, but the district court concluded that Killough's eyes in the video did not appear to be bloodshot. Given the deference we give to the district court's factual findings, we must conclude there is evidence to support the district court's conclusion Killough's eyes were not bloodshot. See *Casper*, 309 Kan. at 1213-14.

KDOR's next two points assert the district court did not consider Killough avoiding eye contact with Caviness or breathing in her direction, as well as his use of cigarettes and mints to mask the alcohol odor. But the district court did consider these facts, finding Killough probably kept his head down because Caviness was complaining about the smoke and was coughing. During the playing of the video, the district court acknowledged hearing Caviness say Killough avoided looking at her and was chain-smoking to mask the alcohol odor. The district court considered these facts and decided they did not constitute reasonable grounds.

Finally, KDOR asserts the district court did not consider Killough's wearing of a wristband from a bar. Specifically, KDOR takes issue with what it believes is the district judge inserting his personal experience to disregard the wristband. As KDOR points out, a wristband from a bar can be a part of the totality of the circumstances in considering if a person was driving under the influence. See *State v. Knopp*, No. 102,972, 2010 WL 3853225, at *1 (Kan. App. 2010) (unpublished opinion).

At the trial, the district judge discussed the wristband, saying:

"I'm 'X' age. I'll not disclose it, but I—I've been in bars where they put it on your hand just to make sure that if you do get a drink no one has to worry about it, so. Not that you have to—you're forced to buy a drink when you put one on. I think that's—I think that's something you could almost notice from being out any place anymore."

KDOR argues the district judge relied on his own personal experience and ignored Kansas law.

While district judges may not use their personal experience to decide an issue at trial without hearing evidence, "a trial judge may use his or her common knowledge and experience to determine the credibility of a witness and assess the weight of a witness' testimony." *State v. Dority*, 50 Kan. App. 2d 336, 343, 324 P.3d 1146 (2014). In *Dority*, the trial judge's guilty verdicts were affirmed when the trial judge "merely noted" the similarity in the case to previous domestic battery cases he had encountered and "indicated that he was not basing his guilty verdicts solely on his common knowledge and experience about domestic violence victims." 50 Kan. App. 2d at 343. The district judge in *Dority* discussed the physical evidence and the victim's written statement. A panel of this court found the defendant received a fair trial because the district judge considered all the evidence. 50 Kan. App. 2d at 344.

This case is similar to *Dority*. Although the district judge did discuss his personal experience, the record shows he did so in the context of considering the admitted evidence—the video and DC-27 form. The discussion shows the district court considered this fact and found it was unpersuasive in light of the totality of the circumstances. Because the district judge considered the totality of the circumstances in reaching his decision, his use of his common knowledge to find that Killough's wearing of a wristband did not mean that he had been drinking and therefore did not support a finding of

reasonable grounds that Killough had been driving under the influence was not improper. Even if we were to conclude the district judge erred in injecting his common knowledge of bar wristbands, as we will discuss below, any such error likely had no effect on the decision to reverse KDOR's suspension of Killough's license.

II.   DID THE DISTRICT COURT ERR BY FINDING REASONABLE GROUNDS DID NOT EXIST TO REQUEST A BREATH TEST?

KDOR also argues the district court erred when it found Caviness did not have reasonable grounds to request a breath test, meaning it lacked the authority to suspend Killough's driver's license. KDOR argues reasonable grounds to request a breath test existed based on the totality of the circumstances, including Caviness smelling the odor of alcohol, Killough's refusal to perform a field sobriety test, and his refusal to testify at trial. Killough admits the evidence, at best, indicates possible impairment but argues Caviness only had an unparticularized hunch that Killough was under the influence, not enough to request a breath test.

KDOR frames its argument as a probable cause argument, but the proper standard is reasonable grounds, which we view as equivalent to probable cause. See *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). The existence of reasonable grounds is a legal question, but it is not easy to delineate between the factual and legal questions in reasonable grounds cases. See *Casper*, 309 Kan. at 1214 ("It is difficult to cleanly differentiate the two components in a case such as this. Factual findings are intertwined with judging the reasonableness of the officer's actions. As a consequence, the court must view the two in combination, examining the totality of the factual circumstances.").

A law enforcement officer shall request a person take a breath test if the officer has reasonable grounds to believe that person was driving a car while under the influence

of alcohol. K.S.A. 2018 Supp. 8-1001(b). As we already indicated, we equate reasonable grounds with probable cause. *Swank*, 294 Kan. at 881. "Probable cause is the quantum of evidence that would lead a reasonably prudent police officer to believe that guilt is more than a mere possibility." *Shrader v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 216, 220, 247 P.3d 681 (2011). A law enforcement officer has reasonable grounds to believe a person is operating a car while under the influence of alcohol if, under the totality of the circumstances, a "reasonably prudent police officer would believe that person's guilt is more than a mere possibility." 45 Kan. App. 2d at 220. Probable cause is determined by evaluating the totality of the circumstances, "giving consideration to 'the information and fair inferences therefrom, known to the officer at the time of the arrest,' with 'no rigid application of factors.'" *Swank*, 294 Kan. at 881.

Although the DC-27 form lists the grounds Caviness relied on to request a breath test, our review may go beyond those facts and include any relevant admitted facts. See *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 416, 233 P.3d 286 (2010). On the DC-27 form, Caviness listed as reasonable grounds: (1) an odor of alcoholic beverages; (2) slurred speech; (3) bloodshot eyes; (4) difficulty communicating; (5) chain-smoking cigarettes and sucking on mints to mask the odor; and (6) refusing to submit to a field sobriety test or preliminary breath test. Additionally, Killough was pulled over for making an illegal turn and was wearing a wristband from the bar he was at. The district court found there was no evidence Killough's speech was slurred, his eyes were bloodshot, or he had trouble communicating and, based on the evidence submitted, the facts did not support reasonable grounds to request a breath test. We agree.

In *Casper*, the law enforcement officer stopped Casper for turning into the wrong lane. When asked, Casper admitted to drinking earlier. The officer testified before the district court that Casper's eyes were not bloodshot and her speech was clear and concise. Casper performed three field sobriety tests, and the officer believed she failed them all. The officer placed Casper under arrest, and she later refused to take a breathalyzer test.

After KDOR suspended her license, Casper appealed to the district court, and the district court reversed the suspension. KDOR appealed to our court, which reversed the district court, but the Kansas Supreme Court reversed and upheld the district court. 309 Kan. at 1213, 1221.

The Kansas Supreme Court found it significant the officer did not testify that Casper's breath smelled of alcohol. Although the video showed the officer telling Casper she reeked of alcohol, the officer never testified he smelled alcohol on her breath, only that he detected some odor of alcohol. The officer's statement on the video was never presented as evidence that Casper had been drinking. In discussing the evidence of odor on Casper's breath, the Kansas Supreme Court said the evidence—which our court relied on to overturn the district court—was not substantial. It concluded the district court's ruling of no evidence of a strong odor of alcohol, after considering the officer's and Casper's testimony, was supported by substantial evidence. 309 Kan. at 1217. Additionally, the Supreme Court found the only evidence of bad driving was "turning into the wrong lane, something that drivers commonly do." 309 Kan. at 1218.

Ultimately, the Kansas Supreme Court held that, while reasonable people may reach differing conclusions from the evidence, appellate courts give deference to the fact-finder who was in the courtroom. The Kansas Supreme Court held substantial competent evidence supported the district court's factual findings and the legal conclusions were correct. 309 Kan. at 1221.

Contrast *Casper* with *Forrest v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 121, 425 P.3d 624 (2018), *rev. denied* 309 Kan. 1347 (2019). In *Forrest*, the district court overturned the defendant's suspension because it found the officer only saw a rolling stop traffic violation, and it discounted the field sobriety tests because the defendant said he had a knee problem. On appeal, a panel of our court held that, in fact, the officer observed the defendant commit multiple traffic infractions and smelled alcohol upon

9

contacting the defendant, the defendant slurred his speech and admitted to consuming alcohol, and there was an open beer can in his vehicle, in addition to the defendant failing the field sobriety tests. The panel held some of the district court's findings were not supported by substantial evidence and the district court ignored substantial uncontroverted evidence supporting reasonable grounds. 56 Kan. App. 2d at 126-27. As a result, the panel overturned the district court, holding reasonable grounds existed to request a breath test. 56 Kan. App. 2d at 128.

The case at hand bears more similarities to *Casper* than *Forrest*. Like *Casper*, the DC-27 form stated Caviness smelled alcohol on Killough, but there was no testimony presented to support this assertion. Caviness saw Killough commit only a single traffic violation of turning into the wrong lane. But unlike *Casper*, Killough never took a field sobriety test. While the refusal to perform a field sobriety test can weigh in favor of finding a person was driving under the influence, it also gives KDOR that much less evidence to support its argument that reasonable grounds existed. See *Hebberd v. Kansas Dept. of Revenue*, No. 115,689, 2017 WL 543545, at *5 (Kan. App. 2017) (unpublished opinion).

Relying on *Londerholm v. U.S.D. No. 500*, 199 Kan. 312, 430 P.2d 188 (1967), KDOR also argues Killough's failure to testify before the district court supports the existence of reasonable grounds and creates an inference that he was trying to conceal his impairment. In *Londerholm*, the Kansas Supreme Court stated that "when a party to a case has failed to offer evidence or produce witnesses within his power to produce, an inference arises that the evidence or testimony which would have been produced would have been adverse to that party." 199 Kan. at 324. We consider *Londerholm* inapplicable here because Killough offered Caviness' video as evidence, which is the best evidence of what happened. Killough's failure to testify does not lead to an inference that he was driving under the influence.

Ultimately, when giving due deference to the district court's factual findings and considering the evidence admitted at trial, substantial evidence supported the district court's findings. The only facts supported by evidence relied upon by Caviness are Killough's improper right turn, the bar wristband, chain-smoking cigarettes and sucking on a mint, not looking directly at her, and his refusal to perform any sobriety tests. The traffic infraction of turning into the wrong lane is a common offense. See *Casper*, 309 Kan. at 1218. While Killough was smoking and looking away from Caviness, on the video Caviness said the smoke bothered her and the cigarette had probably been lit for a while. And a bar wristband only proves Killough was at a bar, not that he was drinking there.

Taken together, this evidence is not sufficient to lead a police officer to believe there was more than a mere possibility that Killough was driving under the influence. While those facts could be considered along with other facts to develop reasonable grounds to believe Killough was driving under the influence, here they are not enough to show Killough's guilt was more than a mere possibility. Under the totality of the circumstances, Caviness lacked reasonable grounds to request a breath test. As such, the suspension of Killough's license was improper.

III.   DID THE DISTRICT COURT ERRONEOUSLY RULE REASONABLE SUSPICION DID NOT EXIST TO INVESTIGATE A DUI?

Finally, KDOR asserts the district court erred by finding Caviness lacked reasonable suspicion to investigate Killough for DUI. But the district court did not make such a ruling. The district judge did comment this case was probably "the worst one I've ever seen, in terms of whether there's reasonable suspicion or anything." But the district court ruled there was no basis to believe Killough was under the influence. Additionally, in its journal entry, the district court found "per the evidence presented at trial and the record on appeal, that the officer [lacked] basis to request testing." The district court's

11

ruling was based on reasonable grounds to request testing, not reasonable suspicion to investigate.

Affirmed.