NOT DESIGNATED FOR PUBLICATION

No. 123,432

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NICOLE LEIGH-ANN LOGUE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed June 17, 2022. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., ATCHESON and HURST, JJ.

PER CURIAM: The State charged Nicole Leigh-Anne Logue with knowing aggravated battery and, in the alternative, reckless aggravated battery for an incident that left her then-boyfriend hospitalized. The facts of the event leading to the hospitalization were somewhat disputed, and after a bench trial the district court found Logue guilty of the lesser offense of reckless aggravated battery and Logue appeals, arguing that there was insufficient evidence to support her conviction. This court finds that despite the contradictory trial testimony, the district court had sufficient evidence to convict Logue of reckless aggravated battery. Logue's conviction is affirmed.

1

FACTUAL AND PROCEDURAL BACKGROUND

Although the facts relate to a single incident, they are somewhat disputed and require a thorough review for this single conviction. On February 19, 2020, the alleged victim, B.E., got off work and returned to the camper-trailer residence that he shared with Logue. B.E. testified that he and Logue had been arguing for several days preceding the incident, and while they disagree on how it began, both testified that they resumed arguing at some point on February 19 after B.E. returned from work at around 7 or 7:30 p.m.

During the argument, Logue made a comment for the purpose of upsetting B.E.—which it did—and he asked her to leave the residence. B.E. testified that he gathered Logue's bags and put them outside the camper door and that after he set the bags down, he "got cut with a knife" but he did not recall "how [Logue] cut [him] or anything like that." He said that he realized Logue cut him because "[t]here was blood all over the floor" and his shirt was wet with blood. Although B.E. testified that he did not remember specifics of the altercation, he remembered that he was bleeding and Logue told him to go the hospital. B.E. did not recall making physical contact with Logue except that he "maybe pushed her away" when she was telling him to go to the hospital after Logue had already cut him. B.E. testified that he then left the camper to call his mother and eventually rode to the hospital with her.

As often occurs, Logue recalls the events differently than B.E. She testified that after B.E. asked her to leave, he began acting "real aggressive," stomping around the camper and acting "real jerky," and she was "scared enough to call the police." She testified that when she tried to call the police, B.E. "smacked" the phone out of her hand and then "shoulder-checked" her and threw her belongings outside. Logue testified that she grabbed her purse and an open knife off the camper table because she wanted to

2

defend herself and the items in her purse. But she also testified that "[a]s long as he would just leave my purse alone, I don't think I would of [*sic*] even grabbed the knife. . . ."

Logue testified that B.E. then "charged" at her from the front door and she put her hands up while still holding the open knife and her purse. Logue testified that she and B.E. got into a physical altercation when B.E. "ran into" the knife and grabbed her, and then they "hit some type of wall" in the camper. Logue testified when they hit the wall, the knife "probably jabbed [B.E.]" and she pushed B.E. off her—cutting herself and cutting B.E. on his chest in the process. Logue testified that she saw blood coming from B.E.'s neck and "kind of went into shock" and when she tried to "assess [B.E.'s] wounds" he would not let her see them and "kept hitting [her]." Logue testified that she told B.E. he needed to go to the hospital, and after he left she locked the door, closed the knife, and set it on the counter.

B.E.'s mother took him to the Sumner Regional Medical Center's emergency room. Christopher Keen, a night supervisor and ER nurse, assisted B.E. and testified that B.E. had lacerations on his face and neck and "kept saying over and over again that his girlfriend stabbed him." In accordance with hospital policy, Keen contacted the police because B.E. alleged that he was stabbed. Wellington Police Department (WPD) Officer Steven Brownlee testified that "his girlfriend, Nicole Logue, had done it." Officer Brownlee testified that B.E. told him that when B.E. turned around from putting Logue's bags outside the camper, Logue "had a knife in his face." B.E. told Officer Brownlee that Logue was yelling at him and waving the knife in his face.

WPD Detective Bobby Wilson also investigated the alleged stabbing and testified that B.E. told him that during the argument Logue said she would not leave the camper and that she would get B.E. fired from his job and arrested. Det. Wilson testified similarly to Officer Brownlee—that B.E. said when he turned around, Logue had a knife

3

in her hand. Det. Wilson testified that B.E. did not initially think Logue had cut him, but then he realized his shirt was wet with blood and pushed Logue away while trying to get to the bathroom mirror to view his injuries. In the emergency room, Det. Wilson observed B.E. had a cut above his lip, a cut on the side of his neck and ear, a superficial chest wound, and a few other scrapes.

While Officer Brownlee and Det. Wilson were at the hospital, Officer Keith Westmoreland drove around the area of the camper looking for Logue and found her across the street. Logue told Officer Westmoreland that she was not injured and did not need an ambulance. Later that evening, after being read her *Miranda* rights, Logue agreed to be interviewed by Det. Wilson at the police station. Logue's explanation of what happened tracked with her trial testimony, except for a few details. According to Det. Wilson, during that interview Logue said that B.E. had never struck or hit her, and that she had no explanation for why she picked up the knife that evening. Logue told Det. Wilson that after B.E. started bleeding, he was "pushing her away," but she did not tell Det. Wilson that B.E. struck her or put her in any kind of danger during the argument. Det. Wilson said he observed Logue for any injuries and officers took photos of her, but they only identified a superficial cut on her finger and what appeared to be an old injury on the back of her neck. According to Det. Wilson, Logue stated that she was not injured that evening.

After the interview, Officer Brownlee arrested Logue and transported her to the jail when, according to Officer Brownlee, Logue "starting trying to say something to the effect that . . . [B.E.] attacked her first. . . ." Officer Brownlee said that once at the jail, he observed Logue during booking to identify any injuries, and did not observe any marks or redness.

The State charged Logue with severity level 7 knowing aggravated battery, and alternatively with severity level 8 reckless aggravated battery. The district court held a

4

bench trial on July 21, 2020 and found Logue guilty of reckless aggravated battery. The district court noted in its decision that:

"There's no self-defense here. [The State] points out that even if she were fearful, he was bumping her, and taking a knife to defend yourself from a shoulder bump is excessive. So she had no right to use the knife to defend herself from what he by her own admission was doing by her own statement. I can't quantify a vibe. There's scant evidence that he was coming for her in any manner. There's absolutely no self-defense here.

"It comes down to me as an issue between is it first count or the alternative count. Was it a knowing battery—aggravated battery, or was it a reckless aggravated battery. By her own testimony, she's guilty on Count 2 of reckless aggravated battery. Some guy's coming at you that's angry and you pick up a knife and shove it at them, what do you think is going to happen? He's going to get cut."

The district court sentenced Logue to 18 months' probation with an underlying prison sentence of 13 months. Logue appeals.

## DISCUSSION

Logue contends that the State produced insufficient evidence that she acted recklessly, and her conviction should be reversed. Logue's argument appears to rely on three contentions: (1) the contradictory testimony of whether B.E. was an aggressor; (2) Logue's right to defend herself in that situation; and (3) that she did not use the knife in a manner to cause death or great bodily harm.

*The State produced sufficient evidence to sustain Logue's conviction for reckless aggravated battery.*

When a criminal defendant challenges the sufficiency of the evidence presented to sustain their conviction, this court reviews the entire record in the light more favorable to

the State and asks whether it is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. The evidence need not be uncontroverted, and circumstantial evidence and proper logical inferences can be sufficient to support convictions for even the most serious crimes. See *State v. Chandler*, 307 Kan. 657, 668-69, 414 P.3d 713 (2018) (discussing reliance on circumstantial evidence and logical inferences). This court will only look to evidence supporting the verdict and will uphold a conviction so long as "the essential elements of the charge are sustained by any competent evidence." *State v. Van Pham*, 234 Kan. 649, 668, 675 P.3d 848 (1984).

The district court found Logue guilty of reckless aggravated battery in violation of K.S.A. 2019 Supp. 21-5413(b)(2)(B), which provides that reckless aggravated battery is "recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Logue primarily challenges the intent element—claiming she did not act "recklessly." A person acts recklessly "when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2019 Supp. 21-5202(j). She also mentions that she did not "use the knife in a manner to cause death or great bodily harm," but the offense of conviction did not require the court to find that she used the knife in such a manner.

Logue apparently claims that there could not be sufficient evidence she acted recklessly because she was acting in self-defense. But Logue's claim of self-defense is only supported by her own trial testimony and a remark she made to Officer Brownlee after she had been arrested. Moreover, Logue's statements to officers prior to her arrest contradict her self-defense claims, and she presented no evidence that she sustained any physical injury. Fact-finders, including judges in a bench trial, may use their common knowledge and experience to determine the credibility of witnesses and assess the weight of their testimony. See *State v. Fulton*, 292 Kan. 642, 647, 256 P.3d 838 (2011); *State v.*

*Dority*, 50 Kan. App. 2d 336, 343, 324 P.3d 1146 (Kan. App. 2014) ("[A] trial judge is allowed to use [their] common knowledge and experience to determine the credibility of a witness and assess the weight of a witness' testimony."). It is clear from the district court's statements that it did not find Logue's trial testimony about B.E. being the aggressor to be credible. On appeal this court shall not reweigh evidence, resolve evidentiary conflicts, or make its own witness credibility determinations. *Chandler*, 307 Kan. at 668.

The sole question on appeal is whether the evidence was sufficient to show that Logue acted recklessly beyond a reasonable doubt. Based on Logue's own testimony, she grabbed an open knife while B.E.'s back was turned as he was tossing her bags outside the camper. Logue testified that up to that point, the only physical contact initiated by B.E. was when he "shoulder-checked" her as he grabbed her bags. B.E. testified that he did not make physical contact with Logue until after she had already cut him. Logue told officers that she had no explanation for why she picked up the open knife. B.E. told officers that when he turned back into the camper, Logue had the knife in her hand and was waving it in his face. Once at the hospital, B.E. told personnel that Logue had stabbed him. There was evidence of multiple lacerations across B.E.'s face, neck, and chest.

While the only two people present have slightly different memories of the events—the trial court viewed all the evidence and weighed the witness credibility, and the totality of the evidence is sufficient to support the district court's conclusion that Logue acted recklessly. The evidence supported the court's conclusion that Logue's actions showed a disregard for the substantial and unjustifiable risk that B.E. may have suffered great bodily harm from her actions with the knife. Even if Logue did not intend to harm B.E., her action of waving an open knife in the air or near a person's face during an argument could rationally be considered "a gross deviation from the standard of care which a reasonable person would exercise in the situation."

7

CONCLUSION

There is sufficient evidence that Logue acted recklessly, such that a rational fact-finder could convict her of reckless aggravated battery. The district court clearly considered the available evidence and made a credibility determination that is consistent with and supported by the evidence. The district court is affirmed.