NOT DESIGNATED FOR PUBLICATION

No. 126,873

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL BRETT BURTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; C. WILLIAM OSSMANN, judge. Submitted without oral argument. Opinion filed March 14, 2025. Affirmed in part and reversed in part.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Michael R. Serra*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., SCHROEDER and ISHERWOOD, JJ.

PER CURIAM: Following an incident at his home, Michael Brett Burton was arrested and later entered into a diversion agreement with the State on two counts of felony aggravated domestic battery, one count of criminal restraint, and one count of misdemeanor domestic battery. Burton violated his diversion, and the case proceeded to a bench trial on stipulated facts, where the district court found him guilty of all charges. He now appeals his domestic battery convictions, challenging the sufficiency of the evidence to support the two felony counts of aggravated domestic battery. He also argues, in the alternative, that his misdemeanor domestic battery conviction was multiplicitous. For the

1

reasons explained below, we affirm his convictions for felony aggravated domestic battery and reverse his conviction for misdemeanor domestic battery.

PROCEDURAL BACKGROUND

In 2020, the State charged Burton with two counts of felony aggravated domestic battery (Counts 1 and 4), misdemeanor domestic battery (Count 2), and misdemeanor criminal restraint (Count 3). Burton was placed on bond with conditions including no contact with the victim, his then-wife Jane (identified here by a pseudonym).

In June 2021, Burton entered into a pretrial diversion agreement and, by doing so, waived his right to a jury trial. Burton agreed to the terms and conditions of the diversion agreement, including the provision that any violations of the agreement would result in a bench trial based solely on stipulated facts. The stipulation included the facts in all law enforcement reports and affidavits and included a waiver of Burton's rights to testify, to call witnesses to testify on his behalf, and to cross-examine witnesses.

Six months later, the State moved to revoke the diversion agreement, alleging that Burton failed to make payments on the required fines and costs, failed to complete a domestic violation evaluation, and failed to complete his community service requirements. Burton stipulated to his violation of the diversion terms and the district court set the case for a bench trial.

As required by the diversion agreement, the trial proceeded on stipulated facts and the State submitted as evidence the amended complaint, the affidavits of law enforcement officers, the officers' offense reports, and the domestic violence screening form. Also required by the agreement was that the evidence was submitted without foundation to support the charges against Burton at trial, and he did not object to the State's exhibits.

2

Based on the evidence submitted, the district court found Burton guilty beyond a reasonable doubt of all charges—two counts of aggravated domestic battery, one count of domestic battery, and one count of criminal restraint. The district court sentenced Burton to a total of 11 months in prison and 12 months in jail to run consecutive to the prison sentence but suspended those sentences and awarded him 24 months of probation.

Burton timely appeals his convictions.

Factual aspects of the incident underlying the charges will be detailed throughout the opinion as they become pertinent to the issues on appeal.

### WAS THERE SUFFICIENT EVIDENCE TO CONVICT BURTON OF TWO COUNTS OF FELONY AGGRAVATED DOMESTIC BATTERY?

Burton first argues there was insufficient evidence to support two separate convictions of aggravated domestic battery. He claims the evidence presented by the State only demonstrated a single act that substantiates a conviction of aggravated domestic battery, and so his conviction of the second count of aggravated domestic battery should be reversed.

*Applicable Legal Standards*

When reviewing a sufficiency of the evidence challenge, appellate courts "review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). When a trial proceeds on stipulated facts, as it did here, appellate courts review the sufficiency of the evidence claim de novo, still viewing the facts in the light most favorable to the State. *State v. Scheuerman*, 314 Kan. 583, 587, 520 P.3d 502 (2022).

The appellant bears a high burden to succeed on a sufficiency of the evidence claim, and "only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

*Facts Underlying Burton's Charges*

As previously stated, the evidence at trial was presented by stipulated facts through law enforcement affidavits, police reports, and the domestic violence screening form. The affidavit of responding Officer Casey Bryan explained that he and Officer Keegan Rupple were dispatched to a home in Topeka for a domestic disturbance.

> "Upon arrival, Michael Burton . . . was outside the residence. [Officer Bryan] then went and spoke with [Jane] who was inside the residence while Officer Rupple stayed outside with Michael. [Jane] had stated that she had went to pick up her husband Michael at Abigail's Bar and Grill. [Jane] stated that Michael had about 4-5 beer [*sic*] headaches. When [Jane] was driving them home, Michael became upset with [Jane] because she couldn't remember what meal they had for their anniversary. [Jane] stated that once they got home, Michael was becoming belligerent and was telling her that he was going to call their landlord, Alex.
>
> "[Jane] had told Michael that he was not making sound decisions because he was intoxicated. [Jane] at this point took Michael's phone away. [Jane] said at this point when she was next to the bathroom, Michael became agitated and had used one hand and wrapped it around her throat. [Jane] said that Michael then pushed her up against the wall. [Jane] said it was hard to breathe when Michael had his hand around her throat. At this point, [Jane] stated she tried to get out of the house through the front door. [Jane] said that Michael had prevented her from leaving through the front door. [Jane] then went to the back door. When [Jane] had opened up the door to the back door, Michael had came over and pushed the door shut, preventing [Jane] from leaving through the back door. [Jane] said that Michael then wrapped his arm around her throat like a choke hold. I asked [Jane] if at any point during the incident if she felt like she was free to leave. [Jane] said she did not feel like she was free to leave because Michael was preventing her from

4

leaving. [Jane] did have a small bruise on her neck. Photos of the bruise were taken with our department issued cell phone.

"[Jane] stated that her and Michael have been married for 1 year and have been together for about 8 years. [Jane] also stated that her and Michael have lived together for 8 years. Michael and [Jane] have two children together. A domestic lethality form was completed and turned in with the case file."

Officer Rupple's police report stated similar facts:

"Upon arrival I made contact with Michael Burton . . . who was seated in the driveway and was cooperative. Michael stated he had gotten into an argument with his wife about her allegedly cheating on him. Michael stated nothing got physical and when he called 911 he came outside as to not create any further issues. After speaking with Michael's wife of one year [Jane], Officer Bryan informed me of the following. [Jane] had picked Michael up from Abigail's bar a short while before the incident occurred. Michael and her began to argue due to Michael being intoxicated and getting upset that she did not know what they had for their anniversary dinner. When they got home, Michael was trying to call his landlord Alex. [Jane] stated that that was not a good idea and took Michael's phone. [Jane] said that Michael became agitated and slammed her up against the wall with one hand around her throat. [Jane] tried to get out the front door but Michael would not let her. At this point, [Jane] had gone to the back door to try and get out. [Jane] said that Michael then shut the back door with his hand and proceeded to wrap his arm around her throat like a choke hold. [Jane] had stated that she did not feel free to leave when she was trying to get out of the house. [Jane] had also stated that it was hard to breathe when Michael was choking her. Michael was taken to DOC for Aggravated Domestic Battery and Criminal Restraint."

In a supplemental offense report, Officer Rupple explained that when he arrived, Jane's family members were outside the residence telling the officers to arrest Burton. Jane told Officer Rupple that Burton had been "choking her and slamming her into the wall." At Jane's mother's request, Officer Rupple spoke to the couple's children, aged 7 and 4. The younger child could not provide any reliable details, but the 7-year-old told

5

the officer that her father, Burton, had "choked her mother with one hand and pushed [her mother] into the bathroom."

*Sufficient Evidence Supports Burton's Two Aggravated Domestic Battery Convictions*

The State bears the ultimate duty to present evidence proving each element of the crime beyond a reasonable doubt. *State v. Buchanan*, 317 Kan. 443, 454, 531 P.3d 1198 (2023). Burton was convicted of two counts of aggravated domestic battery, each under K.S.A. 21-5414(b), which states in pertinent part:

> "(b) Aggravated domestic battery is:
> (1) Knowingly impeding the normal breathing or circulation of the blood by applying pressure on the throat, neck or chest of a person with whom the offender is involved or has been involved in a dating relationship or a family or household member, when done in a rude, insulting or angry manner; or
> (2) knowingly impeding the normal breathing or circulation of the blood by blocking the nose or mouth of a person with whom the offender is involved or has been involved in a dating relationship or a family or household member, when done in a rude, insulting or angry manner."

Burton asserts on appeal that no evidence supports that he impeded Jane's normal breathing or circulation of the blood by blocking her nose or mouth as required by K.S.A. 21-5414(b)(2). He challenges only the sufficiency of the evidence under the elements of K.S.A. 21-5414(b)(1). We agree with Burton that the record is silent on which of the alternative means—section (b)(1) or (b)(2)—the district court used to convict Burton. But an alternative means argument does not apply in bench trials as the concern for jury unanimity is nonexistent. *State v. Dority*, 50 Kan. App. 2d 336, 340, 324 P.3d 1146 (2014). So, we need only review whether there was sufficient evidence to support a conviction of aggravated domestic battery under K.S.A. 21-5414(b)(1), and Burton abandoned any arguments under K.S.A. 21-5414(b)(2). *State v. Davis*, 313 Kan. 244,

248, 485 P.3d 174 (2021) (Issues not briefed on appeal are deemed waived or abandoned.).

Burton argues Officer Bryan's affidavit and Officer Rupple's report describe the same events, and both describe only a single incident that could constitute aggravated domestic battery. He claims the officers' statements mention Jane stating it was hard to breath when Burton choked her *with his hand*. Because Jane mentioned that her breathing was impeded only one time, a requirement of aggravated domestic battery under K.S.A. 21-5414(b)(1), Burton reasons that the stipulated facts do not support a second conviction of aggravated domestic battery.

The State naturally disagrees. It argues that the initial grabbing of Jane's neck, which rendered it hard for her to breathe, supports the first aggravated domestic battery conviction. The State also claims that the subsequent chokehold in which Burton placed Jane was sufficient to support the second aggravated domestic battery conviction.

When reviewing stipulated facts, we cannot ignore the circumstantial evidence presented by the stipulations and the inferences fairly deducible therefrom. *State v. Darrow*, 304 Kan. 710, 716, 374 P.3d 673 (2016). Viewing the evidence in the light most favorable to the State, we find the circumstantial evidence supports a second conviction. First, although one of the officer's narratives reports Jane saying it was "hard to breathe when [Burton] had his hand around her throat" another narrative reports Jane simply saying it was "hard to breathe when [Burton] was choking her," without differentiating which "choking" she was referencing. All narratives are consistent with Jane reporting Burton choked her in two different ways:  once with his hand, and once by using his arm to place her in a chokehold.

Although the officers' reports do not specifically articulate a second instance when Jane complained that she had a hard time breathing, it is reasonable to infer that in either

7

type of choking—whether a chokehold or by a hand wrapped around a person's throat— the person would experience an impediment to breathing or blood circulation. An appellate court does not reweigh evidence, decide any conflicts in the evidence, or determine the credibility of witnesses. *Aguirre*, 313 Kan. at 209. A reasonable fact-finder could have reached the same conclusion as the district court and found Burton guilty beyond a reasonable doubt. Accordingly, based on the stipulated facts in the officers' statements, there was sufficient evidence to support Burton's two convictions.

Applying the applicable standard of review and viewing the totality of the record in the light most favorable to the State, there was sufficient evidence to support a second aggravated domestic battery conviction. As a result, we affirm Burton's conviction of both aggravated domestic battery charges under K.S.A. 21-5414(b)(1).

## WAS BURTON'S CONVICTION OF THE MISDEMEANOR DOMESTIC BATTERY MULTIPLICITOUS?

If we find the evidence sufficient to convict him of both counts of aggravated domestic battery, Burton next argues in the alternative that his misdemeanor domestic battery conviction should be vacated because he would be convicted of three domestic batteries for only two instances of conduct.

*Preservation*

Burton concedes that he did not raise this issue before the district court. But his failure to raise the issue below does not necessarily preclude our review. There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). As required by Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36), Burton explains why we should consider multiplicity for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

8

Burton claims his multiplicity argument only presents a question of law, and because the case was decided on stipulated facts, there are no factual disputes and this court's decision would be finally determinative of the case. So, his claim fits within the first exception. *Allen*, 314 Kan. at 283 (the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case).

Burton also argues we should review his claim because it would serve the ends of justice and prevent the denial of a fundamental right. He has been released from probation, so he is no longer "in custody" for the purposes of raising a multiplicity challenge or ineffective assistance of trial counsel challenge through K.S.A. 60-1507, and if we decline to hear his appeal, he will be prevented from bringing such a claim in the future. See *Mundy v. State*, 307 Kan. 280, 288, 408 P.3d 965 (2018) (A Kansas court only obtains jurisdiction over a K.S.A. 60-1507 motion if a motion is filed while a movant is in custody; probation is custody.). Our Supreme Court has considered multiplicity issues for the first time on appeal for these reasons—in the interests of justice and to prevent denial of fundamental rights. *State v. Gonzales*, 311 Kan. 281, 295, 460 P.3d 348 (2020). As stated by our Supreme Court, "[t]he fundamental right of a defendant to a fair trial under the 5th and 14th Amendments to the Constitution of the United States would be violated by a multiplicitous conviction." *State v. Dubish*, 234 Kan. 708, 718, 675 P.2d 877 (1984).

For these reasons, although Burton raises this issue for the first time on appeal, we will consider his multiplicity challenge.

*Applicable Legal Standards*

We exercise unlimited review over a multiplicity challenge because it raises a question of law. *State v. Martin*, 318 Kan. 538, 543, 544 P.3d 820 (2024). Also, an

appellate court exercises de novo review over any question of statutory interpretation necessary to resolve such a challenge. *State v. Hirsh*, 310 Kan. 321, 338, 446 P.3d 472 (2019).

"[M]ultiplicity is the charging of a single offense in several counts of a complaint or information." *State v. Thompson,* 287 Kan. 238, 244, 200 P.3d 22 (2009). "'The reason multiplicity must be considered is that it creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights.' [Citation omitted.]" *State v. Schoonover*, 281 Kan. 453, 475, 133 P.3d 48 (2006). Whether a conviction is multiplicitous, where the defendant is convicted of multiple violations of the same statute, is determined in Kansas by a "well-established two-part test." *State v. Alston*, 318 Kan. 979, 983, 551 P.3d 116 (2024) (citing *Schoonover*, 281 Kan. 453, Syl. ¶ 1). "Double jeopardy does not attach unless both prongs of the test are met." *Alston*, 318 Kan. at 983.

Under the first portion of this test, we ask whether multiple convictions arise from the same conduct. This is often referred to as the "unitary conduct" prong. When examining whether convictions arise from unitary conduct, we consider whether: (1) the acts occur at or near the same time; (2) the acts occur at the same location; (3) there was an intervening event; and (4) there is a fresh impulse motivating some of the conduct. *Schoonover*, 281 Kan. at 497.

For the second prong of the test, if the convictions result from different statutes, we apply the "same-elements" test to examine whether Burton was twice found guilty of the same offense. *Alston*, 318 Kan. at 983. Using this test, we determine "'"whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution."'" 318 Kan. at 983-84 (quoting *Schoonover*, 281 Kan. at 467 [quoting *United States v. Dixon*, 509

U.S. 688, 696, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993)]). But if the elements are not the same, then the defendant is not being punished twice for the same offense, and multiplicity is not an issue—that is, double jeopardy does not attach. *Alston*, 318 Kan. at 984 (citing *Schoonover*, 281 Kan. at 467).

*Two of Burton's Three Convictions Arose from the Same Conduct*

Burton's primary theory is that the conduct the district court attributed to the misdemeanor domestic battery conviction was the same conduct that substantiated one of the two aggravated domestic battery convictions. Burton argues that, in the event both aggravated domestic battery convictions are upheld, there was no third act that could be separately attributed to the misdemeanor domestic battery conviction. He would then stand convicted of three total domestic batteries for only two instances of conduct, which violates double jeopardy.

On the contrary, the State argues the stipulated facts show that there was substantial evidence to support a separate act for each domestic violence conviction. Specifically, the State claims the child's statement made to Officer Rupple establishes a third distinct action which would support the misdemeanor conviction: Burton pushing Jane into the bathroom.

But we must part ways with the State and agree with Burton. Applying the *Schoonover* framework here supports Burton's conclusion that there was no fresh impulse to support a third instance of domestic battery.

Although the district court's factual findings are sparse, two instances of domestic battery are clearly shown in the stipulated trial exhibits: (1) Burton slammed or pushed Jane up against the wall next to the bathroom with his hand around her throat, before she tried to escape through the front door; and then (2) he wrapped his arm around her throat

11

in a chokehold, after she tried to escape through the back door. These two events, although occurring closely together both in time and inside the same home, were still separated by some distance—one near the front door and one near the back door, and through Jane's description we can assess the fresh impulse motivating Burton's conduct between those two acts. First Jane was attempting to leave through the front door, which Burton was trying to block, and then he began choking her again after preventing her from exiting the back door. The parties do not significantly dispute that there are two different acts of domestic battery present in this case—the question is whether there is a truly separate third act which would support a third conviction.

Neither of the officers' affidavits or report narratives indicate that Jane distinctly mentioned being pushed into the bathroom. Jane references only being pushed or slammed into the wall next to the bathroom as part of Burton's hand being around her throat. Although the child's statement to Officer Rupple mentions a push into the bathroom, any such act—assuming it did occur, taking the evidence in the light most favorable to the State—would have occurred at the same location and the same time as the slam or push into the wall next to the bathroom. There would have been no intervening event or fresh impulse separating the actions, if they were separate actions at all. Burton meets the first prong of the test—the unitary conduct prong.

*Same Offense*

As for the second factor of our test, our Supreme Court has found that the same-element test is supplanted when considering multiplicity challenges involving greater and lesser included offenses. *Martin*, 318 Kan. at 547. Here, Burton's convictions resulted from the violation of two subsections of the same statute: his aggravated domestic battery convictions arose out of K.S.A. 21-5414(b), and his misdemeanor domestic battery conviction arose out of K.S.A. 21-5414(a). We recite the aggravated domestic battery statute alongside the domestic battery statute here for comparison:

12

"(a) Domestic battery is:

(1) Knowingly or recklessly causing bodily harm to a person with whom the offender is involved or has been involved in a dating relationship or a family or household member; or

(2) knowingly causing physical contact with a person with whom the offender is involved or has been involved in a dating relationship or a family or household member, when done in a rude, insulting or angry manner.

"(b) Aggravated domestic battery is:

(1) Knowingly impeding the normal breathing or circulation of the blood by applying pressure on the throat, neck or chest of a person with whom the offender is involved or has been involved in a dating relationship or a family or household member, when done in a rude, insulting or angry manner; or

(2) knowingly impeding the normal breathing or circulation of the blood by blocking the nose or mouth of a person with whom the offender is involved or has been involved in a dating relationship or a family or household member, when done in a rude, insulting or angry manner." K.S.A. 21-5414(a) and (b).

K.S.A. 21-5109(b) outlines that "the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is: (1) A lesser degree of the same crime." K.S.A. 21-5109(b)(1). When drafting K.S.A. 21-5414, the Legislature prescribed two separate levels of domestic battery: simple domestic battery, characterized by bodily harm or physical contact, and aggravated domestic battery, amplified by impeding the breathing or circulation of the victim. When analyzing the crimes of simple battery and aggravated battery, our Supreme Court reached the same conclusion, finding: "Obviously, misdemeanor battery is a lesser degree of the crime of . . . aggravated battery." *State v. Simmons*, 295 Kan. 171, 175, 283 P.3d 212 (2012).

Finding misdemeanor domestic battery is a lesser included offense of aggravated domestic battery, Burton may not be convicted of both aggravated domestic battery and domestic battery for the same conduct. K.S.A. 21-5109(b). And, we have already found that his conduct was unitary—that is, it arose from the same action. For these reasons,

13

Burton satisfies the two-prong test to show that his conviction for misdemeanor domestic battery was multiplicitous, and we reverse that conviction and remand with directions for the district court to vacate the sentence for that conviction.

*Conclusion*

The convictions for aggravated domestic battery are affirmed. The misdemeanor domestic battery conviction is reversed.

Affirmed in part and reversed in part.